UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOA TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>MACNEILL ENGINEERING COMPANY, INC., PRIDE MANUFACTURING COMPANY, LLC, and MACNEILL PRIDE GROUP CORP.,<br><br>        Defendants. | Case No.: 23-CV-01431-GPC-JLB<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER**<br><br>[ECF No. 52] |

  Before the Court is Defendants Pride Manufacturing Company, LLC's ("Pride"), MacNeill Pride Group Corp.'s ("MPGC"), and MacNeill Engineering Company, Inc.'s ("MacNeill") (collectively "Defendants") Motion to Dismiss the Complaint as to MPGC and MacNeill and Motion to Transfer the action as to Pride. ECF No. 52-1. Plaintiff Boa Technology, Inc.'s ("Plaintiff") opposes. ECF No. 55. The Court DENIES Defendants' motion to dismiss and motion to transfer.

## BACKGROUND

Plaintiff filed a complaint against MacNeill for patent infringement on August 4, 2023. ECF No. 1. The complaint alleged that MacNeill infringed on Plaintiff's patents for its reel- and dial-based closure systems—which are used to more easily and precisely tighten the laces or fit of a boot, shoe, or helmet—by making and selling these closure systems, including those used in some Puma and Skechers athletic shoes. *Id.*

MacNeill filed a Motion to Dismiss for lack of venue and personal jurisdiction pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2)-(3). ECF No. 18-1 at 4, 8, 10,[1] and the parties proceeded to limited discovery as to venue and personal jurisdiction. ECF No. 21. Following this preliminary discovery, Plaintiff moved for, and the Court granted, leave to file an Amended Complaint ("AC"). ECF Nos. 28, 28-2, 43. The AC contains substantially the same allegations as in the original complaint, except that it added two Defendants: Pride and MPGC, which it alleges are alter egos of MacNeill. *See* ECF No. 28-13 ¶ 8 (redline version showing changes between original complaint and AC). The AC alleges that Defendants worked in concert with Skechers, headquartered in Manhattan Beach, CA to research, design, and produce shoes incorporating the infringing products. ECF No. 47 at 6-7 ¶¶ 13, 14.

Plaintiff is a Delaware company headquartered in Colorado. ECF No. 47 at 2 ¶ 1. Pride is a Wisconsin company with headquarters in Wisconsin, Maine, and Tennessee. ECF No. 52-2 at 2 ¶ 2. The Pride Division responsible for "all aspects of" the allegedly infringing products is located in Brentwood, Tennessee. *Id.* at 3 ¶ 4. Joseph Henderson, President of the Recreation Division at Pride, has decision-making authority "for all research, design, development, marketing, and sales decisions" regarding Defendants' reel- and dial-based closure systems. *Id.* at 3 ¶ 6. Henderson works at the Tennessee

---

[1] Page numbers reflect CM/ECF pagination.

headquarters, as does Sean Slater, the Director for Brand and Product Innovation at Pride, who is responsible for marketing the closure systems. *Id.*  Pride and MPGC also lease a small office on Balfour Court in Carlsbad, CA, in this district, out of which two individuals work part-time. *Id.* at 3 ¶ 8; ECF No. 40-3 at 4-5.  The two individuals are Kent Richard, a consultant at MPGC whose title is also sometimes listed as Senior Vice President of OEM Sales at MacNeill Engineering, and Kevin Osborn, Regional OEM Sales Manager/Sales Director at MacNeill Engineering.  ECF No. 47 at 6 ¶ 12; ECF No. 40-2 at 2; ECF No. 29-4 at 2; ECF No. 55-1 at 2.

Pride is wholly owned by MPGC, a Delaware holding company which according to Defendants has no employees or property of its own. *Id.* at 4 ¶ 11.[2]  However, Richard's consulting contract is with MPGC and MPGC appears on the lease for the space at Balfour Court.  ECF No. 40-2 at 2; ECF No. 40-3 at 4-5.  MacNeill is a Massachusetts corporation, ECF No. 52-2 at 4 ¶ 9, and the extent to which MacNeill is still an operating entity is disputed, *compare id. with* ECF No. 55 at 8-9.  Plaintiff alleges MacNeill's principal place of business is the Balfour Court office, ECF No. 47 at 2 ¶ 2, but Defendants contend that MacNeill has no activities, place of business, bank accounts, employees, or property and that "MacNeill Engineering" is a brand used by Pride.  ECF No. 52-2 at 4 ¶¶ 9-10.  Nonetheless, MacNeill has a LinkedIn presence and both Richard and Osborn present themselves to the public as employees of "MacNeill Engineering."

---

[2] The AC alleges that MPGC has a principal place of business on Rutherford Road in Carlsbad, CA.  ECF No. 47 at 2 ¶ 4.  But the Henderson Declaration explains that no Defendant has leased space at that location since 2020.  ECF No. 52-2 at 5 ¶ 17.

ECF Nos. 29-3, 29-4; 29-5.  Osborn's offer letter also lists his employer as MacNeill. ECF No. 55-1 at 2.

On March 25, 2024, Defendants filed the instant motion to dismiss MacNeill and MPGC and to transfer the action against Pride to the Middle District of Tennessee.  ECF No. 52.  With the motions, they also filed a Declaration from Joseph Henderson, President of the Recreation Division at Pride ("Henderson Declaration").  ECF No. 52-2.  Plaintiff responded and Defendants replied.  ECF Nos. 55, 59.

On June 18, 2024, the Court sua sponte raised the question of whether MacNeill and MPGC can and should be transferred to the Middle District of Tennessee and directed the parties to provide supplemental briefing on whether the case could have been brought against MacNeill and MPGC there.  ECF No. 62.  Pursuant to that order, Defendants filed a brief, Plaintiff responded, and Defendants replied.  ECF Nos. 63-65.

## MOTION TO DISMISS MPGC AND MACNEILL

### I.  Legal Standard

Defendants move to dismiss MPGC and MacNeill pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) arguing that venue is improper for them in this district under the patent venue statute, 28 U.S.C. § 1400(b).  *See* ECF No. 52-1 at 17-20.  In reviewing a challenge to venue under Rule 12(b)(3), "pleadings need not be accepted as true, and facts outside the pleadings may be considered."  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  The Court accepts as true the allegations in the complaint unless they are contradicted by Defendant's evidence.  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1129 (C.D. Cal. 2009).  Even where the facts are contradicted, the Court must still "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party[.]"  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

The plaintiff bears the burden of demonstrating venue is proper once the defendant makes a venue challenge. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Kelly v. Qualitest Pharms., Inc.*, No. F06-116, 2006 WL 2536627, at *7 (E.D. Cal. Aug. 31, 2006) (collecting cases). If venue is not proper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Venue in patent cases is governed by 28 U.S.C. § 1400(b), which requires that patent infringement cases "be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." A U.S. corporation "resides" only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 267-68 (2017). Because MPGC is a Delaware corporation and MacNeill is a Massachusetts corporation, there is no question that neither "resides in this district. ECF No. 47 at 2 ¶¶ 2, 4. Venue is therefore proper only if MPGC and MacNeill have committed acts of infringement and have a regular and established place of business in this district. *See* 28 U.S.C. § 1400(b). A "regular and established place of business" exists in a district in which the defendant has (1) a physical place in the district; (2) that is regular and established; and (3) that is the place of the defendant. *In re Google LLC*, 949 F.3d 1338, 1340 (Fed. Cir. 2020). Acts of infringement include the marketing and sales of an infringing product. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent.").

## II. Venue is proper over MPGC.

MPGC allegedly committed acts of infringement and has a regular and established place of business in this district. The lease agreement for the Balfour Court property lists the lessee as "MacNeill Pride Group Corp[;] Pride Manufacturing Group, LLC" and was signed by an individual on behalf of the same. ECF No. 40-3 at 4-5. In addition, the

Consulting Agreement signed by Kent Richard—the consultant/Senior Vice President of OEM Sales who works from the Balfour Court office—is with MPGC. ECF No. 40-2 at 2. This is sufficient to allege that MPGC engaged in acts of infringement—marketing and sales—in this district. The AC alleges that Defendants produce shoes incorporating the infringing product with the intent to sell them in this district, ECF No. 47 at 14 ¶ 44, and evidence demonstrates that an individual with the title "Senior Vice President of OEM Sales" works from an office in this district, ECF No. 40-2 at 2; ECF No. 55-1 at 3. Defendants contend that all of the alleged infringing activity—research, design, development, marketing, and sales decisions—took place outside of California. ECF No. 52-1 at 8. But the court must "resolve all factual conflicts in favor of the non-moving party," and given Richard's title and the Carlsbad office space, it is more than reasonable to infer that marketing and sales, infringing activities, occurred in this district. *Murphy*, 362 F.3d at 1138.

Moreover, the Balfour Court location is a regular and established place of business for MPGC. The lease for the building in which MPGC's contracted consultant works indicates that (1) MPGC has a physical location in the district; (2) the physical location is "regular and established" because it is a permanent not temporary space and it is used regularly not sporadically; and (3) it is the place of MPGC, who signed the lease, not the home of an employee. *See In re Cray Inc.*, 871 F.3d 1355, 1362-64 (Fed. Cir. 2017) (explaining the meaning of each element of "a regular and established place of business").

Defendants contend, with no further reasoning, that "[t]he fact that [MPGC] . . . in effect co-signed an addendum to the Carlsbad lease that identified Pride as the lessee does nothing to prove [MPGC] has a regular and established physical place of business and committed acts of infringement in this District." ECF No. 59 at 8. This is unpersuasive. "Relevant considerations include whether the defendant owns or leases the

place," *Cray*, 871 F.3d at 1363, and here, that MPGC signed the lease and contracted with a consultant who works out of the space demonstrates each element of "regular and established place of business," *see id.* at 1362-64. Thus, the Court finds that Plaintiff has sufficiently shown that "the defendant has committed acts of infringement and has a regular and established place of business" in the district and that venue in this district is therefore proper over MPGC. 28 U.S.C. § 1400(b).

**III.   Venue is proper over MacNeill.**

The Court agrees with Plaintiff that MacNeill committed acts of infringement and has a regular and established place of business in this district. Plaintiff argues that venue is proper here because the MacNeill Engineering website list MacNeill's address as the same Balfour Court building leased by Pride and MPGC and because the employee and consultant who work out of that office present themselves to the public as working for "MacNeill Engineering." ECF No. 55 at 8. Moreover, the offer letter for Osborn lists the employer as MacNeill Engineering and his title as "Regional OEM Sales Manager." ECF No. 55-1 at 2. Similar to MPGC, the presence of a sales employee who works out of an office space in this district is sufficient to allege that MacNeill engaged in acts of infringement—marketing and sales—here.

Furthermore, the Court finds that listing a building in this district on its website—at which two individuals who list their employer as MacNeill work—and contracting directly with one of those individuals is enough to show that MacNeill has a (1) physical place in the district; (2) the place is permanent and used regularly not sporadically; and (3) the place is that of the company MacNeill, even if through its connections with MPGC and Pride. *See In re Cray Inc.*, 871 F.3d 1355, 1362-64 (Fed. Cir. 2017) (explaining the meaning of each element of "a regular and established place of business"). Thus, MacNeill has a regular and established place of business in the district.

Defendants explain in their brief and in the Henderson Declaration that Pride uses "MacNeill Engineering" as a brand and that it is not a separate company. ECF No. 59 at 8; ECF No. 52-2 at 4 ¶ 10. The Henderson Declaration also states that MacNeill has been non-operational since 2017, ECF No. 52-2 at 4 ¶ 9, but Plaintiff points out that MacNeill continues to file annual reports with the Commonwealth of Massachusetts, maintains a LinkedIn presence, and that Osborn's offer of employment came from "MacNeill Engineering" in 2019. ECF No. 55 at 8-9 (*citing* 29-2; ECF No. 29-3; ECF No. 55-1 at 2). Resolving the factual dispute in favor of the non-movant, *see Murphy*, 362 F.3d at 1138, the Court finds that for the purposes of the instant motion, MacNeill is an operational company, not just a brand.

Thus, drawing reasonable inferences in Plaintiff's favor, MacNeill has committed acts of infringement and has a regular and established place of business in the district and the Court therefore holds that venue is proper over MacNeill under 28 U.S.C. § 1400(b).

Accordingly, the Court DENIES the motion to dismiss. Because the Court holds that venue is appropriate over MPGC and MacNeill independently, it does not address Plaintiff's argument regarding alter ego liability.

## MOTION TO TRANSFER PRIDE

### I. Legal Standard

28 U.S.C. § 1404(a) permits a federal court to transfer a case to another federal court "where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice[.]" The district court has broad discretion to determine whether to transfer, *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013), but a transfer is inappropriate where it would "merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Court must make "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)

(citation omitted). The party moving for transfer bears the burden of demonstrating that the transfer furthers the convenience of the parties and witnesses and the interests of justice. *Hawkins*, 924 F. Supp. 2d at 1212.

Defendants argue that this Court should transfer Pride to the Middle District of Tennessee. ECF No. 52-1 at 11. The parties do not dispute that the case "might have been brought" against Pride in the Middle District of Tennessee. 28 U.S.C. § 1404(a). However, upon the Court's order for supplemental briefing regarding whether the case should be transferred as to MacNeill and MPGC, ECF No. 62, both parties argued that the case *should not and could not* be transferred as to MacNeill and MPGC, ECF No. 63 at 2; ECF No. 64 at 2. The Court may transfer a case properly in its district only "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). To transfer two Defendants where both parties agree that those Defendants could not be properly brought in the transferee district would be inconsistent with a transfer for the "convenience of the parties . . . in the interest of justice." *See* 28 U.S.C. § 1404(a).

The Court therefore cannot transfer MacNeill and MPGC, but it must still determine if it should grant the motion to transfer Pride. "The overwhelming authority suggests that in suits against multiple defendants, transfer is proper only to a district in which all are subject to personal jurisdiction" and proper venue. *Adam v. Barone*, No. 20-CV-00761, 2020 WL 4584182, at *5 (N.D. Cal. Aug. 10, 2020). But "in situations where a case could have been brought against some but not all of the defendants in the transferee district, Section 1404 permits the Court to sever and transfer the claims against those defendants while retaining the claims against the remaining defendants for whom transfer would not be proper." *Id.*

To transfer Pride and retain MacNeill and MPGC in this district would require the parties to litigate two effectively identical cases in different forums. Plaintiff's claims are the same against each defendant, ECF No. 47 at 14, 17, 19, 21. And the Defendants, if

not alter egos, are clearly very interrelated. *See* ECF No. 47 at 23-24 ¶ 70. In the Court's "individualized" consideration of this case, *Stewart*, 487 U.S. at 29, "it is highly desirable that all of [the plaintiff's] claims are tried in a single forum[.]" *United Truck & Equip., Inc. v. Curry Supply Co.*, No. CV08-01046, 2008 WL 4811368, at *13 (D. Ariz. Nov. 5, 2008). To sever this case into two would be onerous for the parties, a waste of judicial resources, and produce potentially inconsistent judgments. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("The purpose of 28 U.S.C. § 1404(a) is to prevent the waste of time, energy and money." (cleaned up)). Because it is certainly not convenient for the parties to transfer Pride to Tennessee and keep MacNeill and MPGC in this district, the Court DENIES the motion to transfer Pride.[3]

## CONCLUSION

For the reasons above, the Court DENIES the motion to dismiss MacNeill Engineering Company, Inc. and MacNeill Pride Group Corp. and DENIES the motion to transfer venue in the case against Pride Manufacturing Company, LLC.

**IT IS SO ORDERED.**

Dated: August 23, 2024

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] The consideration of whether to split the case predominates the transfer analysis so substantially that the Court does not reach the traditional transfer factors enumerated in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) or the importance of the center of gravity in patent infringement cases, *see, e.g.*, *Anza Tech., Inc. v. Toshiba Am. Elec. Components, Inc.*, No. 2:17-01688, 2017 WL 6538994, at *4 (E.D. Cal. Dec. 21, 2017).